IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
BRYSON CITY DIVISION
CIVIL NO. 2:12CV82-RJC-DSC

| | |
|---|---|
| LEON TEEMS, )<br>        Plaintiff, )<br>)<br>vs. )<br>)<br>CAROLYN W. COLVIN,[1] )<br>Commissioner of Social )<br>Security Administration, )<br>        Defendant. )<br>_____) | **MEMORANDUM AND RECOMMENDATION** |

**THIS MATTER** is before the Court on Plaintiff's "Motion for Summary Judgment" (document #10) and "Brief in Support ..." (document #11), both filed April 10, 2013; and Defendant's "Motion for Summary Judgment" (document #14) and "Memorandum in Support ..." (document #15), both filed July 1, 2013. This case has been referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B), and these Motions are now ripe for disposition.[2]

Having considered the written arguments, administrative record, and applicable authority, the undersigned respectfully recommends that Plaintiff's Motion for Summary Judgment be denied; that Defendant's Motion for Summary Judgment be granted; and that the Commissioner's decision be affirmed.

---

[1]Carolyn W. Colvin became Acting Commissioner of Social Security on February 14, 2013. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Carolyn W. Colvin will be substituted for Michael J. Astrue as the Defendant in this matter. Pursuant to the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), no further action is necessary.

[2]Pursuant to the Pretrial Scheduling Order entered on January 8, 2013, this matter is ripe upon the filing of Defendant's Motion and Memorandum. See Document #7. Local Civil Rule 7.1 (E) clarifies that the briefing schedule applicable under Rule 7.1 does not apply in Social Security appeals.

# I. PROCEDURAL HISTORY

On July 20, 2009, Plaintiff filed an application for a period of disability and Social Security disability insurance benefits ("DIB") alleging that he was unable to work as of June 20, 2009. (Tr. 56-57, 88-94).

Plaintiff's application was denied initially and upon reconsideration. Plaintiff subsequently requested a hearing which was held on July 1, 2011. (Tr. 25-55).

On August 26, 2011, the Administrative Law Judge ("ALJ") issued a decision finding that Plaintiff was not disabled. (Tr. 9-24). Specifically, the ALJ found that Plaintiff had not engaged in substantial gainful activity between his alleged onset date and his date last insured. (Tr. 14). The ALJ also found that Plaintiff suffered from diabetes mellitus and degenerative disc disease which were severe impairments within the meaning of the regulations (Tr. 14), but did not meet or equal any listing in 20 C.F.R. Pt. 404, Subpt. P, App. 1. (Tr. 16). The ALJ then found that Plaintiff retained the Residual Functional Capacity ("RFC")[3] perform a range of medium work.[4] Specifically, the ALJ found that Plaintiff could:

> perform medium work as defined in 20 CFR 404.1567(c). Specifically, I find the claimant is able to lift or carry up to 50 pounds occasionally and 25 pounds frequently. I also find the claimant is able to stand, walk, or sit for six hours each out of an eight-hour workday. Additionally, I find he must avoid concentrated exposure to hazards, which would prevent him from driving or operating machinery.

(Tr. 17). The ALJ found that Plaintiff's medically determinable impairments could reasonably

---

[3]The Social Security Regulations define "Residual Functional Capacity" as "what [a claimant] can still do despite his limitations." 20 C.F.R. § 404.1545(a). The Commissioner is required to "first assess the nature and extent of [the claimant's] physical limitations and then determine [the claimant's] Residual Functional Capacity for work activity on a regular and continuing basis." 20 C.F.R. § 404.1545(b).

[4]"Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds. If someone can do medium work, we determine that he or she can also do sedentary and light work." 20 C.F.R. §§ 404.1567(c), 416.967(c).

be expected to cause the symptoms alleged. He further found that Plaintiff's testimony concerning the intensity, persistence and limiting effects of his symptoms was not entirely credible, and that those symptoms would not preclude medium work as described in the assessed RFC (Tr. 18). Based upon this RFC and the testimony of a Vocational Expert (V.E.), the ALJ concluded that Plaintiff could perform his past relevant work as an insulation installer and therefore was not disabled during the relevant period. (Tr. 20).

On September 14, 2011, Plaintiff filed a Request for Review by the Appeals Council.

By notice dated August 29, 2012, the Appeals Council denied Plaintiff's request for further administrative review. (Tr. 1-7).

Plaintiff filed the present action on November 2, 2012. He assigns error to the ALJ's finding that his obesity and peripheral neuropathy were not severe impairments and to the ALJ's assessment of his RFC. Plaintiff specifically objects to the ALJ's evaluation of the medical opinion evidence and his assessment of Plaintiff's credibility. See Plaintiff's "Brief … in Support ..." at 1 (document #11). Plaintiff also contends that the ALJ erred in relying on the V.E.'s testimony that he was capable of performing his past relevant work as an insulation installer. Id. The parties' cross-motions are ripe for disposition.

## II. STANDARD OF REVIEW

The Social Security Act, 42 U.S.C. § 405(g) and § 1383(c)(3), limits this Court's review of a final decision of the Commissioner to: (1) whether substantial evidence supports the Commissioner's decision, Richardson v. Perales, 402 U.S. 389, 390, 401 (1971); and (2) whether the Commissioner applied the correct legal standards. Hays v. Sullivan, 907 F.2d 1453, 1456

(4th Cir. 1990); see also Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1992) (per curiam). The District Court does not review a final decision of the Commissioner de novo. Smith v. Schweiker, 795 F.2d 343, 345 (4th Cir. 1986); King v. Califano, 599 F.2d 597, 599 (4th Cir. 1979); Blalock v. Richardson, 483 F.2d 773, 775 (4th Cir. 1972).

As the Social Security Act provides, "[t]he findings of the [Commissioner] as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). In Smith v. Heckler, 782 F.2d 1176, 1179 (4th Cir. 1986), quoting Richardson v. Perales, 402 U.S. 389, 401 (1971), the Fourth Circuit defined "substantial evidence" thus:

> Substantial evidence has been defined as being "more than a scintilla and do[ing] more than creat[ing] a suspicion of the existence of a fact to be established. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."

See also Seacrist v. Weinberger, 538 F.2d 1054, 1056-57 (4th Cir. 1976) ("We note that it is the responsibility of the [Commissioner] and not the courts to reconcile inconsistencies in the medical evidence").

The Fourth Circuit has long emphasized that it is not for a reviewing court to weigh the evidence again, nor to substitute its judgment for that of the Commissioner, assuming the Commissioner's final decision is supported by substantial evidence. Hays v. Sullivan, 907 F.2d at 1456 (4th Cir. 1990); see also Smith v. Schweiker, 795 F.2d at 345; and Blalock v. Richardson, 483 F.2d at 775. Indeed, this is true even if the reviewing court disagrees with the outcome – so long as there is "substantial evidence" in the record to support the final decision below. Lester v. Schweiker, 683 F.2d 838, 841 (4th Cir. 1982).

## III. DISCUSSION OF CLAIM

The question before the ALJ was whether Plaintiff became "disabled" at any time as that term of art is defined for Social Security purposes.[5] Plaintiff argues that the ALJ erred in finding that his obesity was not a severe impairment.

Plaintiff bears the burden of establishing that an impairment is severe. Pass v. Chater, 65 F.3d 1200, 1203 (4th Cir. 1995). During the administrative process, Plaintiff never alleged that he was unable to work due to obesity. Plaintiff cites no medical evidence that his obesity significantly limited his physical or mental abilities to perform basic work activities. The record does not establish any functional limitations caused by obesity that are not otherwise accounted for in the assessed RFC. Cosom v. Astrue, No. 11-294, 2012 WL 1898921, at *4 (W.D.N.C. Feb. 23, 2012) (rec. dec. aff'd May 24, 2012) (when plaintiff alleges violation of SSR 02-1p, remand is appropriate if plaintiff points to evidence in the record demonstrating functional limitations due to obesity that are not otherwise addressed by the ALJ); Barnes v. Astrue, No. 11-285, 2012 WL 5457348, at *2-4 (W.D.N.C. Oct. 16, 2010) (rec. dec. aff'd Nov. 8, 2012) (rejecting plaintiff's argument that the ALJ failed to abide by SSR 02-1p, in part, because plaintiff could not identify any evidence establishing any obesity-related limitations that the ALJ failed to consider); Gann v. Astrue, No. 09-355, 2010 WL 3811942, at *11 (W.D.N.C. Sept. 1, 2010) (rec. dec. aff'd Sept. 27, 2010) (noting, in the context of obesity and the proper application of SSR 02-1p, "[i]t cannot, therefore, be error for the ALJ to not consider an impairment that

---

[5]Under the Social Security Act, 42 U.S.C. § 301, et seq., the term "disability" is defined as an:

inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . . .
Pass v. Chater, 65 F. 3d 1200, 1203 (4th Cir. 1995).

5

[inter alia] was not complained of to doctors or the administration."). Accordingly, the ALJ's treatment of Plaintiff's obesity is supported by substantial evidence.

Plaintiff also argues that the ALJ erroneously determined that his peripheral neuropathy was not a severe impairment. Plaintiff contends that his peripheral neuropathy reduces his grip strength relative to that of an average male his age. As the ALJ correctly stated "there is no indication" in the record that Plaintiff's peripheral neuropathy "causes [Plaintiff] any significant limitations." (Tr. 17). The ALJ emphasized that Dr. Stephen Burgess, who examined Plaintiff consultatively, found that he "was able to write and pick up coins with each hand without difficulty" and "to manipulate small and medium objects without difficulty." (Tr. 15-16, referring to Tr. 217). The ALJ noted that although Plaintiff asserted that he could not "use his hands as well [sic] due to arthritis" in August 2009, (Tr. 254) he did not make any complaints "with regard to pain/limitation in the use of his hands" in 2010 or 2011 (Tr. 227-33, 238-241, 244-47, 265-271; see also Tr. 193-201 and 248-51). Treatment notes from 2010 and 2011 "show numerous occasions on which [Plaintiff] was negative for arthralgias" (Tr. 18, referring to Tr. 227, 230, 238, 244, 248, 266, 269).

Dr. Burgess opined that any limitation on Plaintiff's ability to use his hands was "intermittent[]" and "fairly mild[]." (Tr. 217 & 218). Dr. Burgess also reported that the "[r]ange of motion of the joints of the fingers of both [of Plaintiff's] hands was normal," and that "[e]xamination of the hands reveals no tenderness, redness or warmth although there is some mild diffuse swelling." (Id.). Plaintiff has not met his burden of establishing that his peripheral neuropathy significantly limited his physical or mental ability to perform basic work activities. Pass, 65 F.3d at 1203.

Plaintiff next argues that the ALJ erred in assessing his RFC. The ALJ's RFC determination is adequately supported by substantial evidence including Plaintiff's medical records and treatment history, as well as the opinions of state agency reviewing physicians. Dr. Jack N. Drummond, a state agency medical expert, opined in November 2010 that Plaintiff could lift and/or carry up to fifty pounds occasionally and up to twenty-five pounds frequently; that he could stand, walk, or sit for about six hours in an eight-hour workday; that he needed to avoid concentrated exposure to hazards; and that he did not have any limitation in his abilities to push, pull, climb, balance, stoop, kneel, crouch, crawl, reach, handle, finger, hear, or speak. (Tr. 220-23). The ALJ adopted this opinion verbatim. (Tr. 17). The ALJ is entitled to rely on state agency reviewing physicians insofar as they considered all the relevant evidence. Lusk v. Astrue, No. 11-196, 2013 WL 498797, at *4 (W.D.N.C. Feb. 11, 2013) (expert opinions of agency reviewing doctors may amount to substantial evidence where they represent a reasonable reading of the relevant medical evidence, citing 20 C.F.R. §§ 404.1527(c) and (e), 416.927(c) and (e)). See also Stanley v. Barnhart, 116 Fed. App'x 427, 429 (4th Cir. 2004); Gordon v. Schweiker, 725 F.2d 231, 235 (4th Cir. 1984).

Plaintiff argues that the ALJ's reliance on Dr. Drummond's opinion was improper because he did not review the complete medical record. Defendant credibly represents that Dr. Drummond reviewed all medical records that were generated before November 15, 2010 – the date on which he provided his opinion (Tr. 226). Plaintiff has offered no basis for his assertion to the contrary. As Defendant acknowledges, Plaintiff's treating physician Dr. Crystal Gary generated medical records in 2011 that Dr. Drummond obviously did not consider. (Tr. 227-33, 266-71). However, Plaintiff has cited nothing from those records to support his argument that the

7

ALJ improperly adopted Dr. Drummond's opinion. In fact, those records are consistent with Dr. Drummond's opinion. All of those records indicate that Plaintiff was "[n]egative for arthralgias, back pain, . . . myalgias," "weakness," and anxiety (Tr. 227, 230, 266, 269). They do not mention obesity in Plaintiff's complaints or pertinent history. (Tr. 227-32, 266-71). All but one of those records report that Plaintiff had 5/5 strength "in all major muscle groups" (Tr. 229, 232, 268).

Dr. Drummond's opinion is consistent with and well supported by the record as a whole. See 20 C.F.R. § 404.1527(c)(4). As the ALJ noted, the record establishes that Plaintiff "is able to ambulate independently, has normal gait, [and] 5/5 muscle strength" in all major muscle groups (Tr. 19, referring to Tr. 195, 216, 217, 229, 240, 250, 256, 268). As the ALJ also emphasized, the record establishes that Plaintiff "denied diabetes related symptoms at treatment visits in 2010 and 2011" (Tr. 19, referring to Tr. 227, 230, 238, 266; see also Tr. 199 (similar report in May 2009)). As discussed more fully below, the record also establishes that Plaintiff was able to handle and finger (Tr. 217-18) and was negative for arthralgias, myalgias, back pain, hand pain, weakness, and hearing problems (Tr. 193-201, 227-33, 238-241, 244-51, 254, 265-271).

Plaintiff contends that the ALJ failed to assign controlling weight to a checklist opinion provided by Dr. Gary. The Fourth Circuit has held that a treating physician's opinion need not be afforded controlling weight. Hunter v. Sullivan, 993 F.2d 31, 35 (4th Cir. 1992). A treating physician's opinion on the nature and severity of the alleged impairment is entitled to controlling weight only if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in the record. See 20 C.F.R. §§ 404.1527(d)(2) (2002); and Mastro v. Apfel, 270 F.3d 171, 178 (4th Cir. 2001). Therefore,

8

"[b]y negative implication, if a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight." Mastro, 270 F.3d. at 178 (citing Craig v. Chater, 76 F.3d 585, 590 (4th Cir. 1996)).

The ALJ assigned "little weight" to Dr. Gary's checklist opinion (Tr. 19) and sufficiently explained his rationale. A checklist opinion is "entitled to relatively little weight." Berrios Lopez v. Sec'y of Health & Human Servs., 952 F.2d 427, 431 (1st Cir. 1991). See also 20 C.F.R. § 404.1527(c)(3) ("The more a medical source presents relevant evidence to support an opinion . . . the more weight we will give that opinion. The better an explanation a source provides for an opinion, the more weight we will give that opinion"); Halloran v. Barnhart, 362 F.3d 28, 31 n.2 & 32 (2d Cir. 2004) (checklist opinions are "only marginally useful" and "not particularly informative"); Craig, 76 F.3d at 590 (physician"s opinion that is not supported by objective evidence should be accorded significantly less weight); Frey v. Bowen, 816 F.2d 508, 515 (10th Cir. 1987) (checklist forms "unaccompanied by thorough written reports or persuasive testimony, are not substantial evidence") (citing Third Circuit authority).

The ALJ was also entitled to give "little weight" to Dr. Gary's opinion because "it lack[ed] objective evidence for support." (Tr. 19). There is no objective evidence that supports Dr. Gary's checklist opinion that Plaintiff had significant limitations in sitting or standing (Tr. 261), bending or twisting at the waist (Tr. 263), or doing repetitive reaching, handling, or fingering (Tr. 263). An ALJ may reject a treating source opinion that lacks objective support. See Craig, 76 F.3d at 590 (physician's opinion that is not supported by objective evidence should be accorded significantly less weight); 20 C.F.R. §§ 404.1527(c)(2) & 404.1527(c)(3).

The ALJ also correctly noted that Dr. Gary's opinion "conflict[ed] with her own

treatment notes." (Tr. 19). Although Dr. Gary checked boxes indicating that Plaintiff's "pain or other symptoms" would "often" interfere with his attention and concentration (Tr. 261), her "treatment notes actually show numerous times where [Plaintiff] had no complaints of back pain, arthralgias, or myalgias." (Tr. 19, referring to Tr. 227, 230, 238, 244, 248, 266, 269). Although Dr. Gary opined that Plaintiff could lift or carry only twenty pounds occasionally (Tr. 262-63), her notes indicate that he had 5/5 muscle strength in all groups (Tr. 19, citing Tr. 250; see also Tr. 217, 229, 232, 268). Dr. Gary's treatment notes likewise indicate that Plaintiff was "negative for . . . weakness." (Tr. 238, 269; see also Tr. 227, 230, 266). Although Dr. Gary opined that Plaintiff's anxiety affected his physical condition, her treatment notes consistently indicated negative findings for anxiety. (Tr. 196, 238, 248, 269; see also Tr. 227, 230, 244, 266). An ALJ may reject a treating source opinion that is inconsistent with other substantial evidence. See Craig, 76 F.3d at 590 (physician's opinion that is inconsistent with other substantial evidence should be accorded significantly less weight); 20 C.F.R. § 404.1527(c)(4) ("[T]he more consistent an opinion is with the record as a whole, the more weight we will give to that opinion."). For these reasons, the ALJ's decision to afford Dr. Gary's opinion "little weight" is supported by substantial evidence.

Plaintiff next argues that the ALJ erred in the weight he gave to Dr. Burgess's consultative opinion, particularly where the doctor found greater limitations than the ALJ included in the RFC. The ALJ must consider an opinion provided by a consultative medical source "together with the rest of the relevant evidence." 20 C.F.R. §§ 404.1527(b); SSR 96-8p, available at 1996 WL 374184, at *7. The ALJ must also address such an opinion and explain why it was not adopted if it conflicts with the RFC. SSR 96-8p. Here, the ALJ stated that he

assigned "little weight" to certain portions of Dr. Burgess's opinion and adequately explained his rationale. (Tr. 19).

As discussed above, significant portions of Dr. Burgess's opinion are fully consistent with the ALJ's RFC finding. Dr. Burgess opined that Plaintiff had no limitation in his abilities to climb, balance, kneel, or crouch (Tr. 218). Dr. Burgess opined that any limitation on Plaintiff's ability to use his hands was "intermittent[]" and "fairly mild[]." (Tr. 217 & 218). He also found that Plaintiff was able to "manipulate small and medium objects without difficulty." (Id.).

Additionally, the ALJ placed some limitations in the RFC that exceeded those found by Dr. Burgess, such as avoiding any concentrated exposure to hazards (Tr. 214-18).

The ALJ was entitled to give little weight to the portions of Dr. Burgess's opinion that were more restrictive than the assessed RFC. As the ALJ correctly emphasized, "it conflicts with his objective findings." (Tr. 20). As previously stated, an ALJ may permissibly rely upon this kind of inconsistency to reject a medical opinion such as the one that Dr. Burgess provided here. See Craig, 76 F.3d at 590; 20 C.F.R. § 404.1527(c)(4).

Although Dr. Burgess opined that Plaintiff's ability to walk "appears to be mildly to moderately impaired" (Tr. 218), he also reported that Plaintiff "ambulated normally, was able to walk on his heels and toes, could stand on one leg at a time, and was not short of breath with exertion." (Tr. 20, referring to Tr. 216-17). Dr. Burgess continued that Plaintiff "ambulates with a normal gait, which is not unsteady, lurching, or unpredictable;" "is able to perform tandem gait;" an "[e]xamination of the legs reveals no tenderness, redness, warmth, swelling, fluid, laxity or crepitus of the knees, ankles or feet;" and Plaintiff "does not require the use of a

handheld assistive device" such as a cane (Tr. 216-17).

Dr. Burgess opined that Plaintiff's hearing "appear[ed] to be mildly impaired to moderately impaired" (Tr. 218). However, he also noted that "his hearing was adequate for normal conversation." and made "no objective findings" that contradict that notation. (Tr. 20, referring to Tr. 216). Treatment notes throughout the record consistently indicate that Plaintiff did not suffer "diminished hearing" or any other "hearing problems" at any time between the alleged onset date and the date of the ALJ"s decision. (Tr. 193, 196, 199, 227, 230, 238, 244, 248, 254, 269; see also Tr. 246 ("grossly normal hearing")).

Dr. Burgess opined that Plaintiff's ability to squat "appears to be mildly impaired to moderately impaired" (Tr. 218), but he also reported that Plaintiff "could squat without difficulty" (Tr. 20, quoting Tr. 217).

The ALJ's decision to give little weight to portions of Dr. Burgess' opinion is supported by substantial evidence.

Plaintiff also argues that the ALJ's assessment of his credibility is not supported by substantial evidence.[6] The determination of whether a person is disabled by non-exertional pain or other symptoms is a two-step process. "First, there must be objective medical evidence showing the existence of a medical impairment(s) which results from anatomical, physiological, or psychological abnormalities and which could reasonably be expected to produce the pain or other symptoms alleged." Craig v. Chater, 76 F.3d 585, 594 (4th Cir. 1996), citing 20 C.F.R. § 416.929(b); and § 404.1529(b); 42 U.S.C. § 423(d)(5)(A). If there is such evidence, then the ALJ must evaluate "the intensity and persistence of the claimant's pain, and the extent to which

---

[6] In his brief, Plaintiff presents his credibility argument twice, albeit in slightly different forms. Plaintiff raises the issue in the context of vocational limitations caused by pain, document #10-1 at 7-9, and then a second time related to the ALJ's treatment of his credibility in general. Id. at 9-10.

it affects [his] ability to work." Id. at 595, citing 20 C.F.R. § 416.929(c)(1); and § 404.1529(c)(1). The regulations provide that this evaluation must take into account:

> not only the claimant's statements about his or her pain, but also "all the available evidence," including the claimant's medical history, medical signs, and laboratory findings; any objective medical evidence of pain (such as evidence of reduced joint motion, muscle spasms, deteriorating tissues, redness, etc.); and any other evidence relevant to the severity of the impairment, such as evidence of the claimant's daily activities, specific descriptions of the pain, and any medical treatment taken to alleviate it.

Craig, 76 F.3d at 595 (citations omitted).

The ALJ is not required to discuss each factor enumerated in 20 C.F.R. §§ 404.1529(c), 416.929(c). Rather, the decision must contain "specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." SSR 96-7p.

The record contains evidence of Plaintiff's diabetes mellitus and degenerative disc disease – which could be expected to produce some of the pain claimed by Plaintiff. Accordingly, the ALJ found that Plaintiff met the first prong of the test. The ALJ then determined that Plaintiff's subjective complaints were not fully credible, as they were not consistent with the objective evidence in the record.

Contrary to Plaintiff's argument, the ALJ did not discredit his statements because they conflicted with the assessed RFC. Rather, the ALJ analyzed the credibility of Plaintiff's statements, used that analysis as part of the RFC assessment, and then explained that the RFC was based in part upon the credibility analysis. (Tr. 18). That determination is supported by substantial evidence.

Plaintiff does not challenge the substance of the ALJ's credibility analysis. The ALJ specifically found Plaintiff's subjective complaints that he suffered from disabling impairments were inconsistent with the medical record discussed above, as well as his activities of daily living. (Tr. 18). The ALJ noted that Plaintiff admitted driving a "pretty good sized" motorcycle and going fishing and boating. (Tr. 18, referring to Tr. 45, 48-49). The regulations allow this type of evidence to be considered in evaluating Plaintiff's credibility. See 20 CFR §§ 404.1529(c)(3) & 404.1529(c)(3)(i) (claimant's "daily activities" and "pattern of daily living" are "important indicator[s] of the intensity and persistence of [her] symptoms"); SSR 96-7p, available at 1996 WL 374186, at *3, *5 & *7 ("daily activities" are material to assessment of claimant's credibility). An ALJ is entitled to discount the credibility of complaints by a claimant who is able to engage in normal daily activities. Johnson v. Barnhart, 434 F.3d 650, 658 (4th Cir. 2005) (upholding finding that claimant's routine activities – including attending church, visiting relatives, reading, watching television, cooking, cleaning the house, and doing laundry – were inconsistent with complaints of pain); Gross v. Heckler, 785 F.2d 1163, 1166 (4th Cir. 1986) ("the pattern of [claimant's] daily activity" – including socializing, walking to town, grocery shopping, cooking, washing dishes, and generally taking care of a house – "suggests that he was not disabled from working").

Plaintiff contends that the ALJ erred in relying on the assessed RFC in eliciting testimony from the V.E. and in concluding that he could perform his past relevant work. The ALJ's evaluations of the medical record and Plaintiff's credibility were supported by substantial evidence, and this assignment of error fails as well. Having properly formulated Plaintiff's RFC, the ALJ's subsequent reliance on the V.E.'s testimony that Plaintiff retained the ability to

14

perform the job of insulation installer substantially supports the ALJ's determination that Plaintiff could perform his past relevant work. (Tr. 20).

Although the medical records establish that the Plaintiff experienced pain and mental and emotional difficulties to some extent, as the Fourth Circuit has noted, it is the ALJ's responsibility, not the Court's, "to reconcile inconsistencies in the medical evidence." Seacrist, 538 F.2d at 1056-57.

Simply put, "[w]here conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the Secretary (or the Secretary's designate, the ALJ)." Mickles, 29 F.3d at 923 (citing Simmons v. Bowen, 834 F.2d 635, 640 (7th Cir. 1987)). This is precisely such a case, as it contains substantial evidence to support the ALJ's treatment of the record and the hearing testimony, and his ultimate determination that the Plaintiff was not disabled.

## IV. RECOMMENDATIONS

**FOR THE FOREGOING REASONS,** the undersigned respectfully recommends that Plaintiff's "Motion for Summary Judgment" (document #10) be **DENIED;** that Defendant's "Motion for Summary Judgment" (document #14) be **GRANTED**; and that the Commissioner's determination be **AFFIRMED.**

## V. NOTICE OF APPEAL RIGHTS

The parties are hereby advised that, pursuant to 28 U.S.C. §636(b)(1)(c), written objections to the proposed findings of fact and conclusions of law and the recommendation contained in this Memorandum must be filed within fourteen (14) days after service of same.

Failure to file objections to this Memorandum with the District Court constitutes a waiver of the right to de novo review by the District Judge. Diamond v. Colonial Life, 416 F.3d 310, 315-16 (4th Cir. 2005); Wells v. Shriners Hosp., 109 F.3d 198, 201 (4th Cir. 1997); Snyder v. Ridenour, 889 F.2d 1363, 1365 (4th Cir. 1989). Moreover, failure to file timely objections will also preclude the parties from raising such objections on appeal. Thomas v. Arn, 474 U.S. 140, 147 (1985); Diamond, 416 F.3d at 316; Page v. Lee, 337 F.3d 411, 416 n.3 (4th Cir. 2003); Wells, 109 F.3d at 201; Wright v. Collins, 766 F.2d 841, 845-46 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).

The Clerk is directed to send copies of this Memorandum and Recommendation to counsel for the parties; and to the Honorable Robert J. Conrad, Jr.

**SO RECOMMENDED AND ORDERED**.

Signed: July 16, 2013

*[signature]*

David S. Cayer
United States Magistrate Judge